NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

SEP 10 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

STATE OF CALIFORNIA,

    Plaintiff-Appellee,

  v.

AZUMA CORPORATION; PHILLIP DEL
ROSA, in his personal and official capacity
as Chairman of the Alturas Indian Rancheria;
DARREN ROSE, in his personal and official
capacity as Vice-chairman of the Alturas
Indian Rancheria; WENDY DEL ROSA, in
her official capacity as Secretary-Treasurer
of the Alturas Indian Rancheria,

    Defendants-Appellants.

No.   23-16200

D.C. No.
2:23-cv-00743-KJM-DB

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, Chief District Judge, Presiding

Argued and Submitted July 19, 2024
San Francisco, California

Before:  M. SMITH, BENNETT, and JOHNSTONE, Circuit Judges.

Defendant Azuma Corporation ("Azuma") is owned and operated by the

Alturas Indian Rancheria ("Tribe"), a federally recognized Indian tribe. *Indian*

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

*Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs*, 89 Fed. Reg. 944-02, 944 (Jan. 8, 2024). Defendants Phillip and Wendy Del Rosa and Darren Rose are members of the Tribe's governing Business Committee. Rose is also vice-chairman of the Tribe and the president and secretary of Azuma. Throughout California, Azuma manufactures and sells cigarettes to various retailers owned by other Indian tribes ("Tribal Retailers"). The Tribal Retailers then sell cigarettes to consumers, including non-Indian consumers, at or near tribally owned gaming facilities, gas stations, or smoke shops on their reservations. Azuma does not hold any type of state cigarette license, including as a manufacturer or distributor, and does not collect or remit state cigarette taxes. Because of this, California successfully nominated Azuma to the federal Prevent All Cigarette Trafficking Act's ("PACT Act") non-compliant list. 15 U.S.C. § 376a(e)(1).

In some circumstances, the PACT Act federalizes violations of certain state cigarette laws. *See* 15 U.S.C. § 376a(a). The PACT Act requires certain filings to be made by "[a]ny person who sells, transfers, or ships for profit cigarettes or smokeless tobacco in interstate commerce, whereby such cigarettes or smokeless tobacco are shipped into a State, locality, or Indian country of an Indian tribe taxing the sale or use of cigarettes or smokeless tobacco." *Id.* § 376(a). As relevant here, § 376a(e)(2)(A) ("Prohibited Delivery Provision") prohibits any person who has

2

received the non-compliant list and also any person "who delivers cigarettes . . . to consumers" from delivering or causing to be delivered "any package for any person whose name and address are on the [non-compliant] list." The PACT Act defines a consumer as "any person that purchases cigarettes," unless that person is "lawfully operating as a manufacturer, distributor, wholesaler, or retailer of cigarettes." 15 U.S.C. § 375(4). After Azuma persisted in delivering cigarettes to the Tribal Retailers despite being on the PACT Act's non-compliant list, California filed this suit and sought a preliminary injunction against Azuma and some of its officers, including Rose, for allegedly violating the Prohibited Delivery Provision.

The district court granted the preliminary injunction and enjoined Rose, "in his official capacity as vice-chairman of the Alturas Indian Rancheria and as president/secretary of Azuma Corporation, and his employees and agents" from "completing or causing to be completed any delivery" of cigarettes from Azuma "to anyone in California in violation" of the PACT Act. The Defendants appeal, arguing: (1) the PACT Act only applies to "third parties" engaged in delivering goods for an entity listed on the non-compliant list and Rose, as an officer of Azuma, was not such a "third party"[1]; (2) even if the PACT Act does apply, there is no

---

[1] Relatedly, the Defendants argue the district court could not enjoin Rose in his "Tribal capacity," arguing that he enjoys Tribal sovereign immunity and that there was no evidence he effectuated deliveries in his "official capacity" based on his status as vice-chairman of the Tribe. But as president and secretary of Azuma, Rose

violation, because the Tribal Retailers are lawfully operating cigarette businesses and therefore not "consumers" under the PACT Act; and (3) the district court erred in concluding the Tribal Retailers were not necessary parties under Federal Rule of Civil Procedure 19 ("Rule 19"). We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we affirm the grant of the preliminary injunction.

"Our review of a grant of a preliminary injunction is 'limited and deferential.'" *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1188 (9th Cir. 2024) (quoting *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc)). A district court's decision to grant a preliminary injunction is reviewed for abuse of discretion. *All. for the Wild Rockies v. Petrick*, 68 F.4th 475, 491 (9th Cir. 2023). "An abuse of discretion will be found if the district court based its decision on an erroneous legal standard or clearly erroneous finding of fact." *Id.* (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). "We review conclusions of law de novo and findings of fact for clear error." *Id.* To obtain a preliminary injunction, a movant "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of

---

was heavily involved in the day-to-day operations of the company, including its delivery of tobacco products throughout California. Because we find the district court properly enjoined Rose in his official capacity as president and secretary of Azuma, we do not discuss whether it also properly enjoined Rose in his tribal capacity.

4

equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

1. The Defendants are incorrect in arguing the Prohibited Delivery Provision of the PACT Act applies only to third parties delivering tobacco products on behalf of a listed entity. In construing a statutory provision, "we first look to the language of the statute to determine whether it has a plain meaning." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009). The inquiry ends with the text "if the text is unambiguous." *In re Stevens*, 15 F.4th 1214, 1217 (9th Cir. 2021) (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (plurality opinion)).

The Prohibited Delivery Provision prohibits certain deliveries by two types of "persons": a "person who receives the [non-compliant] list" and a "person who delivers cigarettes . . . to consumers." 15 U.S.C. § 376a(e)(2)(A). Azuma, as a "corporation;" the Tribe, as "an Indian tribal government;" the three-member Business Committee, as a "governmental organization of such a government;" and Rose, as "an individual;" are all "persons" under the Prohibited Delivery Provision.[2] The Prohibited Delivery Provision prohibits those persons from "knowingly complet[ing], caus[ing] to be completed, or complet[ing] its portion of a delivery of

---

[2] "Person" is defined as "an individual, corporation, company, association, firm, partnership, society, State government, local government, Indian tribal government, governmental organization of such a government, or joint stock company." 15 U.S.C. § 375(11).

any package *for any person* whose name and address are on the [non-compliant] list." *Id.* § 376a(e)(2)(A) (emphasis added). The Defendants claim that the phrase "for any person" refers to a non-compliant entity separate from the entity making the delivery. In other words, they claim the delivery prohibition only applies when a third-party entity effectuates deliveries for an unrelated entity. But nothing in the text of the statute supports that limitation.

The Prohibited Delivery Provision restricts a "person" who receives the non-compliant list and a "person" who delivers cigarettes to consumers from delivering any package "for any person" on the non-compliant list. Rose was the only person the district court enjoined, and he was delivering for a "person" on the non-compliant list—Azuma. That Rose was not a "third-party" unrelated to Azuma is of no moment under the statute.

2. The Prohibited Delivery Provision applies here because Azuma is on the non-compliant list and the Tribal Retailers that operate smoke shops without remitting taxes or holding the requisite state licenses are "consumers" under the PACT Act. Defendants suggest that at least some of the Tribal Retailers are not bound by California's licensing scheme because of countervailing federal and Tribal interests. In considering whether that state law applies, we evaluate "the nature of the state, federal, and tribal interests at stake," which is "an inquiry designed to determine whether . . . the exercise of state authority would violate federal law."

6

*White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 145 (1980). This balancing may favor the Tribal Retailers such that they are not unlawfully operating under the PACT Act, are not "consumers" under the PACT Act, and thus Azuma is not violating the Prohibited Delivery Provision by delivering cigarettes to them. At the preliminary injunction stage, California has produced enough evidence to support that at least the Tribal Retailers who operate smoke shops are subject to California's regulatory scheme. The Defendants have not met their burden at the preliminary injunction stage to show that any of the Tribal Retailers are operating lawfully.

California bears the initial burden to show a likely violation of the PACT Act. As to the Tribal Retailers that operate "smoke shops," the Supreme Court has held that such sellers are subject to a state's licensing and taxation regulations. *See Moe v. Confederated Salish & Kootenai Tribes of the Flathead Rsrv.*, 425 U.S. 463, 483 (1976) (upholding a state requirement that "Indian tribal seller[s] collect a tax validly imposed on non-Indians" because "nothing in this burden . . . frustrates tribal self-government or runs afoul of any congressional enactment dealing with the affairs of reservation Indians" (internal citations omitted)); *Washington v. Confederated Tribes of the Colville Indian Rsrv.*, 447 U.S. 134, 159–60 (1980) (upholding recordkeeping requirements imposed against Indian retailers in connection to collecting taxes from nonmembers); *Cal. State Bd. of Equalization v. Chemehuevi Indian Tribe*, 474 U.S. 9, 11–12 (1985) (per curiam) (upholding California's

requirement that Indian retailers remit taxes from cigarette sales). At least as to Tribal Retailers that operate smoke shops, California has met its burden of showing a likely PACT Act violation.

The burden then shifts to the Defendants to show that the Tribal Retailers are operating lawfully. The Defendants have not shown that any of the Tribal Retailers hold the requisite state licenses or collect and remit taxes to the State as required by California law. *See* Cal Bus. & Prof. Code §§ 22970.1(a), 22971(q), 22972–22974; Cal. Rev. & Tax Code §§ 30140, 30161, 30163, 30182. It is conceivable that some of the Tribal Retailers generate so much economic value for the Tribe through casinos, resorts, and other business ventures that their on-site cigarette sales, even to non-Indian purchasers, may not be subject to California's requirement that the Tribal Retailers collect and remit taxes for the sale of tobacco products. *See Big Sandy Rancheria Enters. v. Bonta*, 1 F.4th 710, 726 (9th Cir. 2021) ("When a tribe plays an active role in generating activities of value on its reservation with the aid of non-Indian entities, it has a strong interest in maintaining those activities free from state interference . . . ." (internal quotation marks omitted) (quoting *Gila River Indian Cmty. v. Waddell*, 967 F.2d 1404, 1410 (9th Cir. 1992))). At the preliminary injunction stage, the Defendants have not made a sufficient showing that the "exercise of state authority" with respect to any of the Tribal Retailers would unlawfully infringe on tribal sovereignty or violate federal law. *Bracker*, 448 U.S.

at144–45. Thus, California has shown a sufficient likelihood of success on the merits of its PACT Act claim.

It is also not clear that this tribal interest, if applicable, would weigh in favor of the Defendants. The facts, as they come to us, are that Azuma and those who deliver cigarettes for Azuma are violating California law by selling or distributing without any California license. For example, California requires Azuma to have a manufacturer's license to manufacture cigarettes and a distributor's license to distribute cigarettes. Cal. Bus. & Prof. Code §§ 22970.2, 22979.21, 22980.1; Cal. Rev. & Tax Code §§ 30011, 30101–30131.6. Thus, the Tribal Retailers would be violating California law not just because they are not collecting and remitting taxes but also because they are buying and receiving cigarettes from unlicensed entities like Azuma. *See* Cal. Bus. & Prof. Code § 22980.1(c)-(d).[3] We need not decide and express no opinion on whether or how the "economic value" issues relating to collecting and remitting taxes for the sale of tobacco products would be weighed

---

[3]     (c) A retailer, distributor, or wholesaler shall not purchase packages of cigarettes or tobacco products from a manufacturer or importer who is not licensed pursuant to this division or whose license has been suspended or revoked.

(d)(1) A retailer or wholesaler shall not purchase cigarettes or tobacco products from any person who is not licensed pursuant to this division or whose license has been suspended or revoked.

Cal. Bus. & Prof. Code § 22980.1(c)-(d).

9

under *Bracker*. Nor do we decide whether the Tribal Retailers are also "consumers" under the PACT Act because they are illegally buying cigarettes, not simply "illegally" failing to collect and remit taxes to California.[4]

3. The district court correctly concluded the Tribal Retailers are not indispensable parties under Rule 19. A district court's decision under Rule 19 is

---

[4] At oral argument, we asked the Defendants whether their argument was the same "whether the Tribal Retailers are buying cigarettes from Azuma or buying cigarettes from Jimmy who is making them in his basement." Oral Arg. at 5:53–6:10. Putting the question a bit differently, we also asked the Defendants if it was their view that "California can't regulate the Retailers who are selling to other people buying them from somebody who is making cigarettes in their basement." Oral Arg. at 6:29–6:37. The Defendants answered that "no," their position "is not that it can't regulate, [their] position is that to determine whether it can regulate, there is a legal test," referring to the test set forth in *Bracker*, 448 U.S. 136. Oral Arg. at 6:38–6:54.

We note that California's interest in public health may be part of the mix of "state, federal, and tribal interests at stake." *Id*. It has long been the case that states have a strong interest in protecting the health and safety of their citizens. *See Hill v. Colorado*, 530 U.S. 703, 715 (2000) ("It is a traditional exercise of the States' police powers to protect the health and safety of their citizens." (internal quotation marks and citation omitted)); *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 485 (1995) (noting "the Government . . . has a significant interest in protecting the health, safety, and welfare of its citizens"); *see, e.g., Brotherhood of Locomotive Firemen & Enginemen v. Chicago, Rock Island & Pac. R.R. Co.*, 393 U.S. 129, 143–44 (1968). California's requirement that cigarette retailers not buy from, for example, unlicensed cigarette manufacturers, furthers California's interest in protecting the health and safety of its citizens, and thus appears to "clearly fall[] within the exercise of even the most traditional concept of what is compendiously known as the police power." *Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 442 (1960). "The authority of the state to pass laws in the exercise of the police power, having for their object the promotion of the public health, safety and welfare is very broad as has been affirmed in numerous" decisions of the Supreme Court. *Buchanan v. Warley*, 245 U.S. 60, 74 (1917).

reviewed for abuse of discretion. *Walsh v. Centeio*, 692 F.2d 1239, 1241 (9th Cir. 1982). We have previously explained that Rule 19 imposes the following inquiry:

1. Is the absent party necessary (i.e., required to be joined if feasible) under Rule 19(a)?
2. If so, is it feasible to order that the absent party be joined?
3. If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed?

*Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012) (footnote omitted). A party is necessary if: (1) "in his absence, the court cannot accord complete relief among existing parties";[5] (2) "he has an interest in the action and resolving the action in his absence may as a practical matter impair or impede his ability to protect that interest"; or (3) "he has an interest in the action and resolving the action in his absence may leave an existing party subject to inconsistent obligations because of that interest." *Id.*

The district court properly concluded that the Tribal Retailers are not necessary parties, because "those tribal retailers could still prove they acted lawfully in a hypothetical future case regardless of their nonparticipation in this one." The district court did not determine whether the Tribal Retailers were operating unlawfully, nor does anything in the preliminary injunction impact or apply to the

---

[5] The district court noted that the Defendants failed to show the court could not award relief to the State or the Defendants absent joining the Tribal Retailers. The Defendants do not contest that finding.

Tribal Retailers' business operations outside of limiting Azuma from delivering cigarettes to those retailers. A ruling that the Defendants have insufficiently shown the Tribal Retailers are acting lawfully is different from a ruling affirmatively holding that the Tribal Retailers are acting unlawfully.

Even if the Tribal Retailers have a legal interest, they are not "impaired or impeded" from defending that interest by their absence here. Further, even if there is a legal interest, the possibility that defense of that interest is impaired is "minimized" because "the absent party is adequately represented in th[is] suit." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). The Defendants share legal interests with the Tribal Retailers—both groups seek a determination that the Tribal Retailers are not covered by the California's taxation and licensing requirements. And the Defendants are sophisticated entities represented by retained and adequate counsel. Since the Defendants' interests align with that of the Tribal Retailers, the Tribal Retailers would not add a crucial aspect which would otherwise be neglected by the Defendants to this proceeding.

**AFFIRMED.**